Good morning, your honors. May it please the court, your honors. I am Ronald Garland Ritchie, counsel for the petitioner. Sorry, I take this off. I'm counsel for petitioner Maria Morales. Petitioners propose three particular social groups meet the particularity and social distinction requirements in Teralia. There are three PSCs are one, family. Two, El Salvadorian women who are in a domestic relationship. They are unable to leave. And three, El Salvadorian women who are witness to gang criminal activity and are targeted. Well, they're targeted because they've filed a police report. One of the elements to qualify for asylum is that petitioner could establish that they qualify if they're a member of a particular social group. And we believe that she's... What makes them mean? Each one of these PSCs, of course, has to be analyzed, you know, individually. This court has has repeatedly held that the PSC of a family-based... We're in the record where you find evidence to support that assertion. They are socially distinct to the Salvadorian public. Well, first with family, Your Honor, this court's recognized that it is cognizable that a family-based PSC is socially distinct, among other things. And... I would speak specifically to your assertion about the Salvadorian women who are witnesses to gang criminal activity and reported it to the police. Yes. Well, this court in Crispin's case held that, you know, family members of witnesses of criminal activity... Well, maybe so, but to follow up on my distinction, it's not enough that the group itself thinks of itself as socially distinct. It has to be regarded as socially distinct by the society at large, not just by the group's membership. And that's where the evidence is simply lacking. And the reason you run into a problem with social distinction is that people are targeted, not just the group that you pose, but people are targeted regardless. They're just targeted by gangs for many, many different reasons. And so your proposed group sort of bleeds into the society at large, that the society at large wouldn't recognize this as socially distinct. Society at large would think of the situation of, we have a terrible problem with gangs and with violent, brutal behavior for many, many reasons, not just the reason that you posit. So it just, I mean, this is all very loose. Well, in that regard, the home society in El Salvador does recognize these different particular social groups that we propose as being distinct and are identifiable. There are limiting language in these proposed PSCs regarding the gang criminal activity. And in this case, it's, this case is distinguishable by cases that, for example, the respondent has mentioned in that you have women, which is one limitation. They witnessed the activity, but they also followed the police report. And in this case, factually, the petitioner filed a police report twice. And plus, she was there when the gang came in and they threatened to kill her. The State Department report does mention that does discuss about witnesses and how witnesses of gang activity, criminal activity, that the help them, but they're not very successful in El Salvador at that. So that is evidence factually to demonstrate that these PSCs are socially distinct. I just didn't see the evidence in the record that the society at large regarded this as a group. It seemed to me that the proposed group is just one manifestation of a larger societal problem, not a socially distinct group, but simply part of a large, a very large landscape of highly regrettable gang activity and retaliatory conduct for every reason under the sun. And don't just for intruding on their territory or disrespecting them in the way that they are looked at or what have you, but retaliation is a general means of conduct for these gangs. And that's the phenomenon. And to sort of pick out this subgroup and that subgroup and say they're socially distinct, I don't see the evidence for it. And I think it goes against our precedent explicitly that there has to be evidence of social distinction. Well, we agree that definitely social distinction is one of the requirements. And we believe that the facts do demonstrate that the witnesses follow the police report, that they are considered by society in El Salvador as a socially distinct group. They're different than individuals who have just witnessed gang activity or been victims of it. You have in this particular language or limiting language in the PSC that they follow the police report. And we can see that this PSC is the more challenging of the other two. But the petitioner doesn't have to show that she meets or falls within all three of the PSCs that she's proposed. Normally when these cases come up to us, the stronger ones at least present evidence that the witness is credible. But here the IJ is noting all kinds of inconsistencies in testimony. And there's no finding that the testimony is credible. And then when you get to these allegations, you find yourself wondering, did any of this stuff... There's no credibility finding that would aid your client, I don't believe. Well, you know, the precedent decisions are that if a judge doesn't make a specific credibility finding, then the petitioner is deemed to be credible. And the board in this decision didn't question whether the petitioner was credible or not. And therefore, we have to presume and assume that the petitioner was credible in general. And the board doesn't question that in its decision. After putting that view of inconsistencies in the testimony. Well, the IJ, the immigration judge did mention that there were some inconsistencies, but he never made a determination that she was not... He did not make an adverse credibility finding. Therefore, she is presumed to be credible without a specific adverse credibility finding having taken place. Richie, can I ask you about the other two PSGs? Because I think you said that you thought those were stronger. So let me start with the proposed group of Salvadoran women in a PSG than the first one you talked about, given the fact that one of her... One of the folks that was abusing her died. And the other one apparently left her home about 40 years before. So doesn't the record evidence suggest that she is not... She may have been in a relationship that she couldn't leave, but she's not any longer? Well, we believe that the focus of the law is why was the individual targeted? How did they suffer persecution, not something else? Arguably, everyone leaves a relationship at some point, whether it's by death or some other means. Most of these individuals, asylum applicants, come to the United States. Most of them do not come with their abusive partner or abusive family member. So all of them, if you will, leave a relationship at some point. We believe the focus should be on the harm, the suffering, and why. Well, is there no point of bringing asylum or is, in fact, protected from harm? And if, as a factual matter, that's no longer the case in her home country, why would the United States grant asylum on those facts? Well, a couple of reasons. If for no other reason, one is humanitarian asylum, if all that she has suffered in her country. But I want to go back to your previous question. In the administrative record, it does state that her cousin, who had raped her previously, he approached her just right before she left the country. And that's on administrative record 87. So it was, you know, her cousin on the record is still there. In terms, she is likely, again, assaulted, raped by her cousin. And we relied for this PSG on the notes. The board's decision in the matter of ARCG, where they found that domestic violence victims, that they can qualify that that is a cognizable PSG. In that case, that woman had left the country. And the board found that that was still qualified in that language. In this case, you also have, I mean, that the practitioner's partner is a longtime partner. They have a child in that particular social group of family. Council, you have some time for rebuttal. And if my colleagues have questions, that'll be one thing. Otherwise, we'll look forward to hearing from you in rebuttal. Thank you. Ms. Singer, we'd be happy to hear from you. Good morning. My name is Jennifer Singer, and I represent the United States Attorney General, the respondent in this matter. I think the primary question before this part is whether petitioner social group, specifically Salvadoran women who are witnesses to gang criminal activity and who have reported to police and are targeted because of that meets the requirements for particularity and social distinction. And I think the answer to that question is no, it does not. As to particularity, at its core, particularity requires that a group be defined with clear boundaries. And it needs to be clear who is in that group and who is not in it. And the particular social group here, again, Salvadoran women who are witnesses to gang criminal activity and who have reported to police and are targeted because of that, it does not consist of definable boundaries. And it's unclear who is within that group and who is not in that group. And we know this just by looking at the words of the proposed group. Witnesses, we know from Pereira Martinez, that it has two different meanings. It could mean someone who has knowledge of something or someone who has to testify under oath. So we know that term is ambiguous. You add the phrase gang criminal activity to that term witness to modify. I don't think it does much to clarify the group. It could mean someone with knowledge of gang activity or someone who testifies about gang activity. And criminal activity is also overpowered. Does it mean someone reports or is a witness to a gang member who jaywalks or who speeds or litters? Or does it mean something a lot more severe? The whole difficulty with this case, and it sort of runs through all the different alternatives of PSGs, is it's all just very vague and loose. There's not sufficient evidence in the record supporting some claims. There are inconsistencies in testimony. There are questions about what the boundaries of the group are or whether petitioner even fits within them. It's just looked at in its totality. It's just a very vague and loose case. And the statute requires some degree of precision. I agree. I mean, in terms of the social group of Salvadoran women who are witnesses to gang activity, yes, I think that's very vague. As to the other social groups, I don't think there's any vagueness at all. With regard to the family, that was disposed of on Texas ground. And with regard to people in a domestic relationship that you are not able to leave, I think it's clear that petitioner is not a member of that particular social group. So I think those are pretty clear. But in terms of vagueness, yes, this group of witnesses to gang criminal activity is very vague. And particular social group requires particularity. And almost by definition, this group is not as vague. It doesn't have that particularity that is required. Even the word gang is ambiguous. In Amaya, the court made it clear that because MS-13 was used to describe a group, it was clear and unequivocal who that group was. Here, gang is somewhat ambiguous. And then the phrase, who have reported to police, I mean, it's unclear what that means. I looked up our reporting on the web internet, on the Merriam Webster Dictionary says to report means to give an account of, i.e., to tell. To be present, to present oneself, or to make, issue, or submit a report. So under those definitions, the social group could include someone who just tells the police something, or presents herself at the police precinct and discloses something, or actually writes a formal written report and then presents it to the police. And then even within those separate definitions are even more questions. That includes someone who called 911. Does that include an anonymous tipster? Does that include someone who just told police something at a crime scene? Does that have to include someone who actually goes to the police station and makes a statement? Do you have to file an actual report? Do you file a complaint? It just is really unclear who falls within this group and who doesn't fall within the group. Counsel, I think you've made these points very ably in your brief, and we appreciate that. And maybe at this point, the best thing to do is to ask the panel if they have any questions of you. Judge Nguyen, do you have any questions? No, I'm satisfied with the rest of the briefs. Judge Diaz, the panel has no questions. We appreciated the quality of your briefing and your argument. Thank you very much. Thank you, Your Honor, and I'll just rest on the briefs. Thank you. Just a couple of points here. Respondent focuses primarily on one particular social group. As I noted earlier, the petitioner only can be successful if she can establish that she is a one particular social group. It doesn't have to be all three. So we believe that she does, and I think the respondent concedes, that her family-based PSC is cognizable, socially distinct in particular, and immutable, and that her domestic violence or being a victim of domestic violence is cognizable. And they mentioned about nexus, and they argue in their brief that the partner raped and beat his partner continuously over at least a 10-year period, not on account of her gender, not on account of her being his domestic partner. I believe that's incredulous to make that argument, because there is no evidence in the record to show that her partner went out and did this to other women in El Salvador, in the society. The only evidence is that he did this to this woman because she was his. She was his property, and he felt and believed that he could do whatever to her, and it didn't matter because she was his property. So we believe that the government is misplaced in its argument that there is no nexus. What's the, Mr. Ritchie, what's the evidence of that? I mean, that's a compelling argument, but what's the record evidence that that was the motivation? Well, one thing, if you look, actually, there was a pattern. He was doing this on and on. Her partner was using her, was raping her. Even when she tried to leave, he went out and brought her back. Well, but I think the question my colleague goes, we don't know if these accusations or whether they are or whether they aren't, because what reason is there to believe she was done this, treated this way because of family? The government suggests that jealousy or possessiveness or sexual desire, or there may be a lot of reasons that this happens, and we have to take into account the, on account of and because of language in the statute. And if this, I don't know what happened or what didn't happen, but there was no evidence that it happened because of family membership. Well, they had a child together. They lived together for at least 10 years. I think that establishes that there was a domestic relationship. Well, I mean, but there are a lot of men and women that lived together for long periods of time, and during that period, they engage in sexual relations, but that doesn't mean that the reason or motive for those relations is derived from the alleged victim's membership in a particular social group. Well, yes, and we can't see into the perpetrator's mind. We can only, you know, assess based on what happened. It's your burden. It's your burden. Sorry? It is your burden to establish nexus. Correct. At any rate, counsel, I think we do understand your position, and we appreciate it. Thank you for your argument, and I want to thank Ms. Singer for her argument as well. We're very grateful to you both. Thank you very much. All right, I will ask our courtroom deputy, please, to adjourn court, and we will take a five-minute break and give the courtroom the clear after which we will conference. This honorable court stands adjourned, sign die, God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, James Andrew Wynn, Albert Diaz